**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICKEY CASTILLO, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-CV-00910 |
| v. | (CAPUTO, J.) |
| | (MEHALCHICK, M.J.) |
| ALL JANE/JOHN DOES OF DEPUTIZED POSTAL OFFICERS AT ALL FACILITIES PLAINTIFF WAS INCARCERATED, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This is a *pro se* action for damages, asserting several federal civil rights and state law claims against various Defendants pursuant to 42 U.S.C. § 1983. Now pending before the Court is *pro se* Plaintiff Mickey Castillo's amended complaint alleging violations of his rights under the United States Constitution against numerous staff members and officials at the Luzerne County Correctional Facility ("LCCF"), the State Correctional Institution at Retreat ("SCI-Retreat"), and the State Correctional Institution at Smithfield ("SCI-Smithfield"). (Doc. 3). Having conducted its statutorily-mandated screening review of Castillo's amended complaint, for the reasons stated herein, this Court recommends that the amended complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

I.   **BACKGROUND**

On May 8, 2015, Castillo, proceeding *pro se*, filed the instant civil rights action. (Doc. 1). On May 19, 2016, Castillo filed a motion to proceed *in forma pauperis* (Doc. 2), which the Court

granted in an Order dated December 29, 2015. (Doc. 4). Castillo filed an amended complaint as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure on June 5, 2015. (Doc. 3).

The facts that form the basis of Castillo's amended complaint took place between March and June of 2014, during which time Castillo was transferred between LCCF, SCI-Retreat, and SCI-Smithfield. (Doc. 3). Castillo first was temporarily held at LCCF "on a writ" between March 27, 2014 and April 11, 2014. (Doc. 3, ¶ 35). Immediately upon arrival, Castillo submitted a request slip asking to be provided with free stamps, legal envelopes, and a legal pad because he was indigent. (Doc. 3, ¶ 36). On April 1, 2014, after failing to receive a prompt response to his request slip and seeking advice from a corrections officer on the block and staff in the block control room, Castillo deposited various unstamped legal documents into the prison mailbox and also submitted a new request slip to notify LCCF staff that he had placed these legal filings in the prison mailbox. (Doc. 3, ¶¶ 37-39). These legal documents included a request to stay a habeas corpus petition before the Middle District of Pennsylvania (Case No. 3:14-cv-00418), "summons paperwork" for a civil rights lawsuit that Castillo also initiated in the Middle District (Case No. 3:13-cv-02953), and other pleadings presumably involving unrelated cases.[1] (Doc. 3, ¶ 37). Two days later, Castillo submitted another round of request slips seeking clarification on the status of the legal documents that he deposited in the prison

---

[1] In addition to the amended complaint in this matter, the Court takes judicial notice of the publicly-available docket sheets, opinions, and orders entered in state and federal proceedings involving Castillo. *See generally Castillo v. Fisher*, No. 3:14-cv-00418 (M.D. Pa. filed Mar. 6, 2014); *Castillo v. Maguire*, No. 3:13-cv-02953 (M.D. Pa. filed Dec. 9, 2013); *Commonwealth v. Castillo*, No. CP-40-CR-0000848-2009 (Luzerne County C.C.P.); *Commonwealth v. Castillo*, No. 1970 MDA 2012 (Pa. Super. Ct. 2012); *Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014).

mailbox. (Doc. 3, ¶ 40). On or about April 6, 2014, Mrs. Gillis, an LCCF mail room official, visited Castillo at his cell and informed him that she personally oversees all mail at LCCF, so she would know of any mail that was submitted. (Doc. 3, ¶¶ 5, 41-42). Gillis also told Castillo that the prison handbook contained a protocol for indigent inmate legal mail, which provided that inmates could file a request slip and receive a free yellow legal envelope the following day.[2] However, Gillis refused Castillo's request to review video camera footage from April 1, 2014 in order to confirm that Castillo sought advice from a corrections officer and control room staff on the block before submitting his unstamped legal documents into the prison mailbox. (Doc. 3, ¶¶ 43-44). (Doc. 3, ¶¶ 45, 47).

After utilizing the indigent inmate legal mail protocol to obtain a free legal envelope, on April 8, 2014 Castillo resubmitted the same legal documents he initially sent a week earlier by handing them to an LCCF official. (Doc. 3, ¶¶ 48-50). The following day Castillo received a postal receipt notifying him that a fee was charged because the package weighed over eight ounces. (Doc. 3, ¶ 51). Several weeks later, after Castillo was transferred from LCCF to SCI-Retreat, he learned that his request to stay the habeas corpus petition was never received. (Doc. 3, ¶¶ 52, 56).

On April 11, 2014, Castillo was transferred to SCI-Retreat. (Doc. 3, ¶ 52). Prior to his transfer, Castillo initiated a grievance complaining about LCCF medical staff. (Doc. 3, ¶ 57). After the grievance presumably was denied on initial review, Castillo alleges that he deposited a grievance appeal into the prison mailbox at SCI-Retreat on the day he arrived there. (Doc. 3, ¶

---

[2] Castillo disputes whether this protocol was published in the prison handbook. (Doc. 3, ¶ 46). In any event, whether or not the protocol was published in the prison handbook is irrelevant to Castillo's claims.

58). Four days later, Castillo submitted a request slip to SCI-Retreat staff seeking confirmation that his grievance appeal was sent to LCCF. (Doc. 3, ¶ 59). On or about April 17, 2014, Castillo received a response from a Ms. T.H., who was employed either in the business office or mail room at SCI-Retreat, informing Castillo that his grievance appeal was not sent to LCCF because he lacked sufficient funds in his inmate account. (Doc. 3, ¶ 60). Castillo further complains that his original grievance and the accompanying cash slip were not returned to him. (Doc. 3, ¶¶ 61-62). Instead, Castillo alleges that he was informed he must pay a $15 fee to be given back his grievance appeal letter.[3] (Doc. 3, ¶¶ 63-64). In response, Castillo filed a request slip to his unit manager, Mrs. Lefler, complaining that his grievance appeal letter had not been returned and proposing various "ideas and rules" for SCI-Retreat to prevent the problem from recurring. (Doc. 3, ¶¶ 65-66). After Mrs. Lefler denied the request slip, Castillo filed a grievance against Mrs. Lefler and the individuals responsible for holding his outgoing legal mail. (Doc. 3, ¶¶ 67-68). This attempt was also unsuccessful, as grievance personnel "backtalked" Castillo and refused to provide any relief. (Doc. 3, ¶ 69). To date, his April 11, 2014 grievance appeal letter has yet to be returned. (Doc. 3, ¶ 72). Castillo eventually was able to obtain his monthly cash statement for April of 2014, which did not contain any reference to the cash slip for his outgoing legal mail or a corresponding deduction in funds. (Doc. 3, ¶¶ 70-71).

On or about April 25, 2014, Castillo was transferred from SCI-Retreat to SCI-Smithfield. (Doc. 3, ¶¶ 56, 70). In early May of 2014, Castillo submitted a brief in regard to a petition he had filed for leave to file a petition for allowance of appeal nunc pro tunc before the Supreme

---

[3] Castillo does not specify who issued this $15 "ransom" demand for the return of his outgoing legal mail.

Court of Pennsylvania that was initially filed on March 5, 2014. (Doc. 3, ¶¶ 72-73); *see also Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014). Specifically, this brief appears to have been submitted in response to the Commonwealth's "no answer" letter to his petition, filed on April 8, 2014. (Doc. 3, ¶ 73); *see also Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014). Sometime after he submitted his brief, the Supreme Court of Pennsylvania informed Castillo that they only received an empty envelope without the actual brief. (Doc. 3, ¶ 74). Included with the letter from the Supreme Court of Pennsylvania was the original envelope sent by Castillo, which had been stamped with the letters "CMPC." (Doc. 3, ¶¶ 75-76). Castillo apparently presumed that this "CMPC" individual or entity was responsible for the contents of his brief failing to reach the Supreme Court of Pennsylvania, and filed a grievance complaining about the missing brief in early June of 2014.[4] (Doc. 3, ¶¶ 76-78). A few weeks later, Castillo mysteriously received an unmarked package containing his missing brief to the Supreme Court of Pennsylvania and a pre-paid envelope. (Doc. 3, ¶¶ 81-82). Castillo has not received an explanation as to why the brief was removed from his initial submission and confiscated. (Doc. 3, ¶ 83).

Castillo's amended complaint is now before the Court pursuant to its statutory obligation under 28 U.S.C. § 1915(e)(2) to screen a complaint brought *in forma pauperis* and dismiss it if the complaint fails to state a claim upon which relief can be granted.

---

[4] Castillo asserts that this grievance was taken off SCI-Smithfield's formal grievance tracking system, and that grievance officers at SCI-Smithfield instead communicated with him about the grievance via post-it notes. (Doc. 3, ¶ 79). To the extent that Castillo complains of SCI-Smithfield grievance officials' failure to follow a particular grievance procedure, this claim is not cognizable, as discussed in detail below.

## II.   SECTION 1915 STANDARD

Under 28 U.S.C. § 1915, the Court is obligated, prior to service of process, to screen a civil complaint brought *in forma pauperis*. The Court must dismiss the complaint if it is frivolous or malicious, or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has

not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court of the United States held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

III.   **DISCUSSION**

Castillo brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
>
> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In order to avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

A.   FIRST AMENDMENT MAIL TAMPERING AND ACCESS TO THE COURTS CLAIMS

The gravamen of Castillo's amended complaint centers on allegations that various Defendants interfered with his outgoing legal mail and thereby denied Castillo his right of access to the courts. Specifically, Castillo alleges that (1) LCCF staff failed to ensure delivery of the various unstamped legal documents that he deposited in the prison mailbox on April 1, 2014, as well as the properly stamped and addressed request to stay his habeas corpus petition that he resubmitted a week later; (2) Ms. T.H. and other SCI-Retreat staff failed to send his grievance appeal to LCCF, allegedly because Castillo lacked sufficient funds in his inmate account, and then also refused to return the submission to him unless he paid $15; and (3) SCI-

Smithfield staff and/or "CMPC" removed a brief from the envelope that Castillo submitted to the Supreme Court of Pennsylvania regarding his petition for leave to file a petition for allowance of appeal nunc pro tunc. (Doc. 3, ¶¶ 37-39, 48-50, 60-62, 74-78).

### 1. First Amendment Claim for Interference with Outgoing Mail

Castillo's claim that his outgoing legal mail was subject to interference invokes the protection of "two different constitutional rights: the right to free speech under the First Amendment and the right of access to courts." *Williams v. Lacakwanna Cnty. Prison*, No. 1:13-CV-00849, 2015 WL 4729438, at *4 (M.D. Pa. Aug. 10, 2015). To state a claim under the First Amendment for interference with legal mail, an inmate must allege a "pattern and practice" or an "explicit policy" that "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). However, inmates need not allege that actual injury resulted from prison officials' interference with their legal mail in order to state a First Amendment claim. *Jones*, 461 F.3d at 359. With respect to outgoing prison mail, the Third Circuit employs a two-part test to determine whether a prison regulation or practice that interferes with legal mail does not violate the First Amendment in light of prison officials' interest in maintaining prison and inmate security: "(1) that the regulation must further an important or substantial government interest unrelated to the suppression of expression; and (2) that the regulation be no greater than necessary for the protection of that interest." *Nasir v. Morgan*, 350 F.3d 366, 374 (3d Cir. 2003) (citing *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).

Even given this Court's obligation to construe *pro se* pleadings liberally, the facts alleged in Castillo's amended complaint are insufficient to state a valid First Amendment claim.

Instead, Castillo relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, which fail to nudge his claim "across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570. As a preliminary matter, although Castillo avers that Defendants "created an unwritten policy that is unconstitutional," he fails to explain what that policy consisted of and does not allege that Defendants employed any sort of blanket policy of obstructing inmates' legal mail. (Doc. 3, ¶ 93). Thus, in order to sufficiently state a First Amendment claim, Castillo must allege a "pattern and practice" of interference with his outgoing legal mail. *See Jones*, 461 F.3d at 359.

The incidents Castillo describes are insufficient to set forth a pattern and practice of interference with legal mail that impinges on his First Amendment rights. Isolated instances of outgoing inmate mail being lost or confiscated, without more, do not amount to a constitutional violation. *See Booze v. Wetzel*, No. 1:13-CV-2139, 2016 WL 4191041, at *4-5 (M.D. Pa. Apr. 5, 2016) (collecting cases), *report and recommendation adopted*, No. 13-CV-2139, 2016 WL 4158771 (M.D. Pa. Aug. 5, 2016). Courts within the Third Circuit have declined to set a specific number of instances of interference with outgoing mail at which point the occurrences are presumed to be a pattern and practice that rises to the level of a constitutional violation. *See, e.g., Taylor v. Oney,* 196 F. App'x 126 (3d Cir. 2006) (not precedential) (holding that complaint stated a potential First Amendment claim where plaintiff alleged legal mail was opened outside of his presence on eight occasions over a four year period). Instead, a plaintiff must provide detail as to how the instances of interference with legal mail, taken together, constitute a pattern and practice that amounts to a First Amendment violation. *Booze*, 2016 WL 4191041, at *5. In this respect, Castillo's claims of mail interference simply fall short.

In total, Castillo alleges four instances where his mail was not promptly delivered. First, he claims that LCCF Defendants failed to deliver the unstamped outgoing legal mail that he deposited in the prison mailbox on April 1, 2014. (Doc. 3, ¶¶ 37-39). However, Castillo does not assert that this legal mail was opened by LCCF staff or that the communications were otherwise stripped of their confidentiality. This Court is hard pressed to see how the LCCF Defendants' actions were unlawful in this particular instance, given that Castillo admits he failed to provide the proper postage and that Mrs. Gillis specifically informed him a few days later of the protocol he could follow to receive free shipping materials for his legal mail. (Doc. 3, ¶¶ 37, 45-49). Second, Castillo alleges that after resubmitting the same legal materials in a properly stamped and addressed envelope a week later, his request to stay a habeas corpus petition was never received by United States Magistrate Judge Schwab. (Doc. 3, ¶¶ 52, 56). Castillo does not claim that this particular motion was opened or destroyed by the LCCF Defendants, instead asserting that Defendants' negligence in failing to follow "chain of custody protocol" was responsible for the motion either being lost or stolen. (Doc. 3, ¶¶ 88-89). However, prison officials are not liable under § 1983 for mere negligence in the handling of outgoing prisoner mail. *Williams v. Frame*, 821 F. Supp. 1093, 1098 (E.D. Pa. 1993). Third, Castillo alleges that upon his transfer to SCI-Retreat, Ms. T.H. and other SCI-Retreat staff refused to mail his outgoing grievance appeal against LCCF medical staff on the basis that Castillo lacked sufficient funds in his inmate account, and that they then confiscated the grievance appeal because he refused to pay a $15 ransom. (Doc. 3, ¶¶ 60-64). At no point, however, does Castillo assert that the grievance appeal was opened and read by Ms. T.H. or other SCI-Retreat staff members. Fourth, while Castillo was incarcerated at SCI-Smithfield, he mailed an envelope containing a brief to the Supreme Court of Pennsylvania regarding his

petition for leave to file a petition for allowance of appeal nunc pro tunc. (Doc. 3, ¶¶ 73-74).

When the Supreme Court of Pennsylvania received Castillo's envelope, the brief itself had been

removed. (Doc. 3, ¶¶ 73-74). Castillo alleges that an individual or entity named "CMPC" is

responsible for opening his legal mail addressed to the Supreme Court of Pennsylvania and

removing the brief, but he also blames SCI-Smithfield staff for "blindly" turning over custody of

Castillo's outgoing legal mail to "CMPC." (Doc. 3, ¶¶ 75-78, 83, 103-05).

Castillo's allegations are simply insufficient to establish a "pattern and practice" of mail

interference. Of the four instances Castillo complains of, only the latter two potentially lend

support to a First Amendment claim for mail interference, whereas the events that occurred at

LCCF merely sound in negligence. Moreover, although the incidents that Castillo raises all

occurred over the span of a few months, they took place at different prisons located across the

Commonwealth and each incident involved different Defendants. Because Castillo has not pled

plausible facts to support his bald assertion that all Defendants conspired together to disrupt his

outgoing mail, any basis for finding that Defendants' actions constituted a "pattern and

practice" of mail interference is speculative and wholly conclusory. (Doc. 3, ¶ 84); *see also Booze*,

2016 WL 4191041, at *5; *Barrett v. C.O. Matters*, No. 1:14-CV-1250, 2015 WL 5881602, at *8

(M.D. Pa. Sept. 30, 2015); *Flynn v. Dep't of Corr.*, No. 3:12-CV-1535, 2015 WL 434997, at *4–5

(M.D. Pa. Feb. 3, 2015). Accordingly, it is recommended that Castillo's First Amendment mail

interference claim be dismissed without prejudice for failure to state a claim.

### 2. Access to the Courts

Castillo's allegations of interference with his outgoing legal mail also raise the

"fundamental constitutional right of access to the courts" that is embodied in the First and

Fourteenth Amendments. *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430

U.S. 817, 828 (1977)). Where a prisoner asserts that defendants' actions have inhibited his opportunity to present a past legal claim, he must show (1) he suffered an actual injury—that is, that he lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim because of the alleged interference; and (2) he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial-of-access suit. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). However, if "an inmate does not allege an actual injury to his ability to litigate a claim, his constitutional right of access to the courts has not been violated." *Caldwell v. Beard*, 305 F. App'x 1, 3 (3d Cir. 2008) (not precedential). Thus, an access-to-courts claim differs from a general First Amendment claim of interference with prisoner mail in that a prisoner-plaintiff need not allege that the violation resulted from a "pattern and practice" or explicit policy, but must assert an actual injury. *See Williams*, No. 1:13-CV-00849, 2015 WL 4729438, at *4 (M.D. Pa. Aug. 10, 2015).

Here, Castillo's access-to-courts claims must fail because he does not allege an actual injury to his ability to litigate a claim resulting from any of the four incidents he complains of. While Castillo asserts that his request to stay a habeas corpus petition never reached Judge Schwab, he fails to allege that any potential grounds for relief in his habeas petition were denied as unexhausted because the motion to stay was not received. Indeed, a review of the docket for Castillo's habeas petition reveals that Castillo submitted a second motion to stay that was received and docketed by the court on August 12, 2014 (Case No. 3:14-cv-00418, Doc. 36), and denied in an order dated November 5, 2014 (Case No. 3:14-cv-00418, Doc. 47). To date, Castillo's habeas petition remains pending and none of his asserted grounds for relief have been denied as unexhausted or procedurally defaulted. (Case No. 3:14-cv-00418). In regard to Castillo's allegation that SCI-Retreat Defendants refused to mail his grievance appeal against

LCCF medical staff, "it is well-established that inmates do not have a due process right to a grievance procedure and therefore 'any allegations of improprieties in the handling of [a] grievance do not state a cognizable claim under § 1983.'" *Bell v. Lindsay*, 116 F. Supp. 3d 511, 515 (E.D. Pa. 2015) (alteration in original) (quoting *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (not precedential)). Furthermore, any potential denial of access-to-courts claim based on the brief that Castillo attempted to submit to the Supreme Court of Pennsylvania in regard to his petition for leave to file a petition for allowance of appeal nunc pro tunc also fails. Under Pennsylvania Rule of Appellate Procedure 2501(a), "[a]fter the . . . case has been submitted, no brief, memorandum or letter relating to the case shall be presented or submitted, either directly or indirectly, to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of the argument." Castillo fails to allege—and the docket of his proceedings before the Supreme Court of Pennsylvania does not reveal—that he ever filed an application to submit a post-submission communication. *See Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014). Accordingly, Castillo could not have suffered an actual injury as a result of the removal of his brief from the envelope he sent it in, because the submission was improper under Pa. R. App. P. 2501 regardless. In light of the fact that Castillo could not possibly have suffered an actual injury from any of the instances of mail tampering that he complains of, it is respectfully recommended that his access-to-the-courts claims be dismissed with prejudice for failure to state a claim.

## B. PROCEDURAL DUE PROCESS CLAIMS

Castillo also appears to claim that the alleged seizure of his legal submissions constituted a violation of his right to procedural due process. (Doc. 3, ¶ 84). However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the

procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Adequate remedies were available here, as Castillo availed himself of the administrative grievance process to complain of the seizure of his outgoing legal mail, and could have also filed a state court tort action. *See Ball v. Oden*, 425 F. App'x 88, 89 (3d Cir. 2011) (not precedential) (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)). Accordingly, it is recommended that Castillo's procedural due process claim be dismissed with prejudice for failure to state a claim.

### C.  LACK OF PERSONAL INVOLVEMENT

Castillo also brings claims against several Defendants purely on the basis that they either failed to respond to Castillo's grievances in the manner that he desired or supervised other Defendants whom Castillo accuses of violating his civil rights. (Doc. 3, ¶¶ 88, 91-93, 96-101, 104, 107-08). However, it is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). Personal involvement can be demonstrated through allegations of "personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Moreover, "[a]llegations of . . . actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

### 1.  Failure to Adequately Respond to Grievances

Castillo brings claims against Mrs. Gillis, the grievance officers at LCCF who investigated Castillo's complaints against Mrs. Gillis, Mrs. Lefler at SCI-Retreat, the grievance

officers at SCI-Retreat, the SCI-Retreat warden and deputy warden, and the grievance officers at SCI-Smithfield for their inability or unwillingness to resolve Castillo's grievances and informal complaints in a manner that he deems satisfactory. (Doc. 3, ¶¶ 88, 91, 97, 99, 101). However, neither the filing of a grievance or participation in the "after-the-fact" review of a grievance is sufficient to establish personal involvement. *See Pressley v. Beard,* 266 F. App'x. 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard,* 167 F. App'x. 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.,* No. CIV. 4:CV–06–1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn,* 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that prison officials' failure to respond to inmate's grievance does not state a constitutional claim), *aff'd,* 142 F.3d 430 (3d Cir. 1998) (table). Furthermore, this Court is guided by the well-established principle that inmates "do not have a constitutional right to a prison grievance system." *Arroyo v. Li,* No. 3:CV–13–1506, 2014 WL 4294506, at *3 (M.D. Pa. Aug. 28, 2014) (citing *Jones v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 137–38 (1977) (Burger, J., concurring); *Speight v. Sims,* 283 F. App'x 880, 881 (3d Cir. 2008) (not precedential)). Accordingly, any attempt by Castillo to establish liability against these Defendants solely based upon their inappropriate responses to his request slips and grievances does not by itself

support a constitutional claim. *See Alexander v. Gennarini,* 144 F. App'x. 924, 925 (3d Cir. 2005) (not precedential) (affirming dismissal of § 1983 claims because the allegations "merely assert[ed defendants'] involvement in the post-incident grievance process," which is not a basis for § 1983 liability); *Okey v. Strebig,* 531 F. App'x. 212, 215 (3d Cir. 2013) (not precedential) ("The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." (citation omitted)). Because Castillo's reliance on allegations that Defendants ignored or responded inappropriately to his request slips and grievances cannot serve as the basis for establishing personal involvement, it is respectfully recommended that the claims against the grievance officers at LCCF, Mrs. Lefler, the grievance officers at SCI-Retreat, and the grievance officers at SCI-Smithfield each be dismissed from the case with prejudice for failure to state a claim due to a lack of personal involvement.[5] *See, e.g., Paluch v. Sec'y Pennsylvania Dep't Corr.,* 442 F. App'x 690, 695 (3d Cir. 2011) (not precedential) (affirming that district court's summary dismissal at the screening stage "was appropriate because there is no apparent obligation for prison officials to investigate prison grievances").

### 2. Supervisory liability

Castillo additionally brings claims against the following Defendants based on their supervisory roles at LCCF, SCI-Retreat, or SCI-Smithfield: Mrs. Gillis; the supervisors of LCCF's mail room staff and grievance officers; the deputy warden and warden of LCCF; the supervisors of SCI-Retreat's mail room staff and business office; Mrs. Lefler's supervisor at SCI-

---

[5] Castillo's claims against the warden and deputy warden of SCI-Retreat, as well Mrs. Gillis, based on their unsatisfactory responses to his request slips and grievance appeals likewise fail. However, the Court does not recommend dismissal with prejudice in regard to these Defendants because Castillo also alleges supervisory liability claims against them, as discussed in more detail below. (Doc. 3, ¶¶ 89, 101).

Retreat; the supervisors of SCI-Retreat's grievance officers; the deputy warden and warden of SCI-Retreat; the supervisors of SCI-Smithfield's mail room staff; the supervisors of "CMPC"; and the deputy warden and warden of SCI-Smithfield. (Doc. 3, ¶¶ 89, 92-93, 96, 98, 100-01, 104, 107-08). However, it is well-settled law that "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207. Thus, "an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability." *Padilla v. Beard,* No. CIV. 1:CV–06–0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006).

Here, Castillo fails to plead that any of the supervisory Defendants were personally involved in the alleged constitutional deprivations. Castillo instead incorrectly asserts that these Defendants were imputed with knowledge sufficient to satisfy the personal involvement requirement on the basis of their status as supervisors. The Third Circuit has noted that "'[t]here are two theories of supervisory liability,' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) (alterations in original)). Castillo does not establish the applicability of either of these theories to the supervisory Defendants named in his amended complaint.

Castillo's arguments regarding policymaking liability are plainly insufficient. "[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional

violation." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015). As a preliminary matter, Castillo largely neglects to allege that specific supervisory Defendants had policymaking authority. *See Chavarriaga*, 806 F.3d at 223 ("Courts recognize that liability under § 1983 may be imposed on an official with *final policymaking authority* if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff." (emphasis added)). In the rare instances where Castillo alleges that a specific supervisory Defendant is a policymaker, he fails to identify any unconstitutional policy that the Defendant policymaker established or maintained, and then attribute his own injuries to that policy.[6] *See, e.g.*, (Doc. 3, ¶ 93 (accusing LCCF's deputy warden and warden of "creat[ing] an unwritten policy that is unconstitutional" and "hav[ing] polic[ies] that are unconstitutional" without stating what those customs or policies are)). Castillo thus fails to sufficiently allege that any supervisory Defendants are responsible for establishing or enforcing an unconstitutional policy that caused his injuries.

Alternatively, Castillo may establish supervisory liability by pleading that the supervisory Defendants knew of and acquiesced to their subordinates' constitutional violations. *See Rode*, 845 F.2d at 1207. "To establish knowledge and acquiescence of a subordinate's

---

[6] Castillo perhaps comes closest to identifying a specific policy or custom where he alleges that the supervisors of mail room staff at SCI-Retreat and SCI-Smithfield were responsible for inadequate procedures to protect legal mail from being opened and tampered with. (Doc. 3, ¶¶ 95, 104). However, he fails to allege that these John and Jane Doe mail room supervisors actually had the authority to change policy at SCI-Retreat and SCI-Smithfield. *See, e.g., Parkell v. Danberg*, No. 14-1667, 2016 WL 4375620, at *9 (3d Cir. Aug. 17, 2016) (affirming in relevant part a grant of summary judgment to prison supervisors because prisoner-plaintiff "has not pointed to any evidence of where the search policy, practice, or custom came from"). Moreover, even if Castillo sufficiently alleged that the mail room supervisory Defendants had policymaking authority, his supervisory liability claims would still fall short because the alleged custom at issue—the inadequate protection of legal mail—sounds in negligence and thus does not rise to the level of a constitutional violation, as noted above.

misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater*, 945 F. Supp. 2d at 588. Here, Castillo pleads no facts that could support a finding that any supervisory Defendants had either contemporaneous or prior knowledge of their subordinates' interference and tampering with outgoing legal mail in violation of the First Amendment. For instance, although Castillo alleges in his amended complaint that the supervisors of mail room staff at SCI-Retreat "fail[ed] to train their subordinates creating the inevitable debacle raise[d] herein," he does not state how the need for more or different training should have been obvious to these supervisory Defendants.[7] (Doc. 3, ¶ 96); *see Broadwater*, 945 F. Supp. 2d at 588 ("A failure to train only amounts to deliberate indifference 'where the need for more or different training is obvious' and the lack of training can be expected to result in constitutional violations." (quoting *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir. 1999)). Thus, Castillo's failure to provide any non-conclusory allegations of the supervisory Defendants' contemporaneous or prior knowledge of their subordinates' misconduct is fatal to his attempt to establish supervisory liability under a theory of "knowledge and acquiescence."

---

[7] Similarly, Castillo alleges in conclusory fashion that the deputy warden and warden of SCI-Retreat "were fully aware of the affairs of their subordinates" on the basis that the deputy warden and warden were responsible for reviewing grievance appeals. (Doc. 3, ¶ 101). However, as noted above, a prison official cannot be held liable as a supervisor merely for participation in "after-the-fact" review of a grievance. *See Pressley*, 266 F. App'x. at 218.

Because Castillo's claims against these supervisory Defendants, as currently stated, merely consist of assertions of *respondeat superior* liability, it is respectfully recommended that Castillo's supervisory liability claims be dismissed without prejudice for failure to state a claim due to a lack of personal involvement.

D. CONSPIRACY CLAIMS

Castillo fleetingly avers that the allegations in his amended complaint "show[ ] a pattern/conspiracy to interfere with [his] mail to cause procedural defaults" in his legal and administrative grievance proceedings. (Doc. 3, ¶ 84). It is unclear whether Castillo raises this conspiracy allegation in an attempt to satisfy the "pattern and practice" requirement to state a First Amendment violation in spite of the fact that the alleged acts of mail tampering were committed by disparate actors located at three different prisons, or whether he seeks to assert a discrete conspiracy claim. In any event, Castillo's conclusory attempt to plead a conspiracy falls short. "[I]t is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." *Deangelo v. Brady*, 185 F. App'x. 173, 175 (3d Cir. 2006) (not precedential). Thus, as noted in *Twombly*, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57. Instead, "[t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 F. App'x 100, 103 (3d Cir. 2013) (not precedential). Moreover, "[t]o constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Phila., Pa.*, 533 F.3d 183, 205 (3rd Cir. 2008); *see also Twombly*, 550 U.S. at 556 (requiring "enough factual matter (taken as true) to suggest that an

21

agreement was made"). Given that Castillo fails to allege any non-conclusory, well-pled factual allegations that Defendants formed a conspiracy to deprive him of his rights in the case at bar, it is respectfully recommended that Castillo's allegations of a conspiracy be dismissed without prejudice.

     E.  STATE LAW CLAIMS

     In construing his amended complaint liberally, as this Court must do, Castillo also appears to assert state law claims. Where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Whether a court exercises supplemental jurisdiction is within its own discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). A court's decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n. 7. Therefore, it is recommended that Castillo's state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  LEAVE TO AMEND

     The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, it is recommended that Castillo be given the opportunity to file a second amended

complaint that is complete in all respects. Any amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). In regard to his § 1983 claims, Castillo must aver facts indicating the personal involvement of each state actor in the alleged wrongdoing. *See Rode,* 845 F.2d at 1207. However, the Court does not recommend granting leave for Castillo to reassert his access-to-the-courts and procedural due process claims, because both claims fail as a matter of law given the facts of this case. Likewise, Castillo's claims against the grievance officers at LCCF, Mrs. Lefler, the grievance officers at SCI-Retreat, and the grievance officers at SCI-Smithfield are also futile because the only allegations against these Defendants consists of their unsatisfactory responses to Castillo's grievances, which does not rise to the level of a constitutional violation as a matter of law.

## V.   RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Castillo's access to the courts and procedural due process claims be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

2. Castillo's claims against the Jane and John Doe grievance officers at the Luzerne County Correctional Facility, Mrs. Lefler, the Jane and John Doe grievance officers at SCI-Retreat, and the Jane and John Doe grievance officers at SCI-Smithfield each be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and the Clerk of Court be directed to **TERMINATE** these Defendants from this action;

3. Castillo's remaining federal law claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

4. Castillo's state law claims be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3);

5. Castillo be given thirty (30) days leave to file a second amended complaint that reasserts his remaining claims in accordance with Rule 8(d)(1) of the Federal Rules of Civil Procedure; and

6.   The matter be remanded to the undersigned for further proceedings.


                                                    **BY THE COURT:**


**Dated: September 20, 2016**                       *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MICKEY CASTILLO,

               Plaintiff,

      v.

ALL JANE/JOHN DOES OF
DEPUTIZED POSTAL OFFICERS AT
ALL FACILITIES PLAINTIFF WAS
INCARCERATED, et al.,

               Defendants.

CIVIL ACTION NO. 3:15-CV-00910

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **September 20, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **September 20, 2016**

                                     *s/ Karoline Mehalchick*
                                     **KAROLINE MEHALCHICK**
                                     **United States Magistrate Judge**