# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MICKEY CASTILLO,

               Plaintiff,

      v.

ALL JANE/JOHN DOES OF
DEPUTIZED POSTAL OFFICERS AT
ALL FACILITIES PLAINTIFF WAS
INCARCERATED, et al.,

               Defendants.

CIVIL ACTION NO. 3:15-CV-00910

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

Now pending before the Court is the second amended complaint of *pro se* Plaintiff Mickey Castillo (hereinafter referred to as "Castillo") submitted in accordance with the District Court's Memorandum and Order dated October 17, 2016. (Doc. 7). In the instant pleading, Castillo alleges various violations of his federal civil rights, and state law claims against numerous staff members and officials at the Luzerne County Correctional Facility ("LCCF"), the State Correctional Institution at Retreat ("SCI-Retreat"), and the State Correctional Institution at Smithfield ("SCI-Smithfield"). (Doc. 11). Having conducted its statutory screening review of the second amended complaint, the Court respectfully recommends the second amended complaint (Doc. 11) be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

## I. BACKGROUND

On May 8, 2015, Castillo, proceeding *pro se*, filed the original complaint in this matter asserting several federal civil rights and state law claims against various Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). On May 19, 2016, Castillo filed a motion to proceed *in forma pauperis* (Doc. 2), which the Court granted in an Order dated December 29, 2015. (Doc. 4). Castillo filed an amended complaint as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure on June 5, 2015. (Doc. 3).

Pursuant to its statutorily mandated authority to screen complaints filed *in forma pauperis*, on September 20, 2016 the undersigned United States Magistrate Judge issued a Report and Recommendation that dismissed the amended complaint (Doc. 3) with respect to Castillo's access to the courts claim, procedural due process claim, and claims against Mrs. Lefler and the grievance officers at LCCF, SCI-Retreat and SCI-Smithfield,[1] but granted Castillo leave to file a second amended complaint in order to reassert his remaining federal claims. (Doc. 6, at 23). Specifically, this Court stated that in the second amended complaint Castillo must aver facts that would indicate the remaining defendants' personal involvement in the alleged wrongdoing, and emphasized that it did not give leave for Castillo to reassert his access to the courts claims, procedural due process claims, and grievance procedure claims. (Doc. 6, at 23). The District Court issued an Order adopting the Report and Recommendation

---

[1] Pursuant to the Court's initial Report and Recommendation, the following parties were terminated as defendants in the present action: the Jane and John Doe grievance officers at LCCF, Mrs. Lefler, the Jane and John Doe grievance officers at SCI-Retreat and the Jane and John Doe grievance officers at SCI-Smithfield. (Doc. 6, at 23).

on October 17, 2016 (Doc. 7), and Castillo filed the instant second amended complaint on November 16, 2016.[2] (Doc. 11). Castillo's second amended complaint raises claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985(2), and 18 U.S.C. § 1964(c). In the present complaint, Castillo re-alleges numerous claims against various Defendants (specifically Mrs. Gillis, the LCCF and its Personnel, Mrs. Lefler, SCI-Smithfield and its Personnel, and SCI-Retreat and its Personnel) and asserts Equal Protection and Civil RICO claims for the first time. (Doc. 11).

The facts that form the basis of Castillo's amended complaint took place between March and June of 2014, during which time Castillo was transferred between LCCF, SCI-Retreat, and SCI-Smithfield. (Doc. 11). Castillo first was temporarily held at LCCF between March 27, 2014 and April 11, 2014. (Doc. 11, at ¶ 17). On April 1, 2014, Castillo left various legal documents with the LCCF mailroom, as he was unaware how to obtain proper postage and other mailing materials. (Doc. 11, at ¶¶ 20-21). These legal documents included a request to stay a habeas corpus petition before the Middle District of Pennsylvania (Case No. 3:14-cv-00418), and a "summons to initiate a complaint" for a civil rights lawsuit that Castillo also filed in the Middle District (Case No. 3:13-cv-02953).[3] (Doc. 11, at ¶ 20). Castillo subsequently requested

_____

[2] On November 10, 2016, Castillo subsequently filed a motion for relief and supporting brief which has since been terminated by the Court. (Doc. 8; Doc. 9). In the motion for relief, Castillo avers that he never received a copy of the undersigned's Report and Recommendation, and had no notice of the decision until the October 17, 2016 Order. (Doc. 8, at ¶¶ 2-3). Castillo thus requested that the Court vacate its October 17, 2016 Order and grant him permission to amend the complaint. (Doc. 8, at 3). While Castillo presumably submitted the instant complaint in connection with his motion for relief, the filing of a second amended complaint remains permissible under the October 17, 2016 Order.

[3] In addition to the amended complaint in this matter, the Court takes judicial notice of the publicly-available docket sheets, opinions, and orders entered in state and federal proceedings involving Castillo. *See generally Castillo v. Fisher*, No. 3:14-cv-00418 (M.D. Pa. filed

clarification on how the mail system worked at LCCF so as to ensure delivery of the legal documents, but received no response from the mailroom personnel. (Doc. 11, at ¶ 23). On or about April 3, 2014, Castillo submitted a number of notices to LCCF Grievance personnel regarding the handling of his mail. (Doc. 11, at ¶ 24). Specifically, Castillo alleged that his legal documents were kept in the possession of the LCCF mailroom staff and that his requests to procure postage for had been ignored. (Doc. 11, at ¶ 24). Several days later, on or about April 6, 2014, Mrs. Gillis, an LCCF mail room official, visited Castillo at his cell and informed him that she personally oversaw all mail at LCCF and would know of any mail that had been submitted. (Doc. 11, at ¶¶ 24-26). Gillis also told Castillo that protocol for indigent inmate legal mail provided inmates with a free yellow legal envelope and prepaid postage.[4] (Doc. 11, at ¶ 30). However, Gillis refused Castillo's request to review video camera footage from the LCCF mailroom in order to confirm that Castillo sought advice in regards to his mail from a corrections officer and control room staff on the block. (Doc. 11, at ¶ 27).

After utilizing the indigent inmate legal mail protocol to obtain a free legal envelope, on April 8, 2014 Castillo resubmitted the same legal documents he initially sent a week earlier by handing them to an LCCF official. (Doc. 11, at ¶ 31). The following day Castillo received a

---

Mar. 6, 2014); *Castillo v. Maguire*, No. 3:13-cv-02953 (M.D. Pa. filed Dec. 9, 2013); *Commonwealth v. Castillo*, No. CP-40-CR-0000848-2009 (Luzerne County C.C.P.); *Commonwealth v. Castillo*, No. 1970 MDA 2012 (Pa. Super. Ct. 2012); *Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014).

[4] Castillo disputes whether this protocol was published in the prison handbook. (Doc. 11, at ¶ 29). In any event, whether or not the protocol was published in the prison handbook is irrelevant to Castillo's claims.

U.S. postal receipt notifying him that a fee was charged because the package weighed over eight ounces. (Doc. 11, at ¶ 32).

On April 11, 2014, Castillo was transferred to SCI-Retreat. (Doc. 11, at ¶ 33). Prior to his transfer, Castillo initiated a grievance complaining about the LCCF medical staff. (Doc. 11, at ¶¶ 24, 33). After the grievance presumably was denied on initial review, Castillo alleges that he deposited a grievance appeal into the prison mailbox at SCI-Retreat on the day he arrived there. (Doc. 11, at ¶ 33). Four days later, Castillo submitted a request slip to SCI-Retreat staff seeking confirmation that his grievance appeal was sent to LCCF. (Doc. 11, at ¶ 34). On or about April 17, 2014, Castillo received a response from a Ms. T.H., who was employed either in the business office or mail room at SCI-Retreat, informing Castillo that his grievance appeal was not sent to LCCF because he lacked sufficient funds in his inmate account. (Doc. 11, at ¶ 35). Castillo further complains that his original grievance was not returned to him. (Doc. 11, ¶ 36). Instead, Castillo alleges that he was informed by the grievance personnel that he must pay a fifteen dollar fee to be given back his grievance appeal letter and cash slip records.[5] (Doc. 11, at ¶ 36). In response, Castillo filed a request slip to his unit manager, Mrs. Lefler, complaining that his grievance appeal letter had not been returned and offering various suggestions to SCI-

---

[5] Castillo avers he requested both the SCI-Retreat mailing department and grievance department to return his mail to him, but that his request would not be granted unless he paid a fifteen dollar fee. (Doc. 11, at ¶ 37). The record does in fact show that Castillo requested a copy of his cash slip records from the Business and Inmate Accounts department on April 17, 2014, presumably to verify whether any funds had been deducted in relation to his mailing attempts. (Doc. 11, at 46). In response, Castillo received SCI-Retreat's "Release of Information Policy" that advised him of the fifteen dollar search and retrieval fee that accompanied the processing of cash slip records requests. (Doc. 11, at 47). There is no evidence that Castillo ever paid the requisite fifteen dollar processing fee to obtain his cash slip records at SCI-Retreat, nor that a fifteen dollar fee was ever related to the retrieval of Castillo's mail.

Retreat so as to prevent the problem from recurring. (Doc. 11, at ¶ 38). After Mrs. Lefler denied the request slip, Castillo filed a grievance against Mrs. Lefler and the individuals responsible for holding his outgoing legal mail. (Doc. 11, at ¶¶ 39-40). This attempt was also unsuccessful, as the grievance personnel refused to provide any relief. (Doc. 11, at ¶ 41). To date, his April 11, 2014 grievance appeal letter has yet to be returned. (Doc. 11, at ¶ 45). Castillo eventually was able to obtain his monthly cash statement for April of 2014, which did not contain any reference to the cash slip for his outgoing legal mail or a corresponding deduction in funds. (Doc. 11, at ¶ 44).

In late April, after he had been transferred from SCI-Retreat to SCI-Smithfield, Castillo received an Order dated April 21, 2014 from the Middle District of Pennsylvania denying his Motion to file an Amended Complaint in a separate federal case. (Doc. 11, at ¶ 42); *see also Castillo v. Maguire*, No. 3:13-cv-02953 (M.D. Pa. filed Dec. 9, 2013). In the Order, the Court noted that Castillo failed to file a supporting brief in accordance with local rules, and identified Castillo as a state prisoner at the Pike County Jail. (Doc. 11, at ¶¶ 42-43). Castillo maintains that he has never been incarcerated at Pike County Jail, and further implies that the Court's Order had been delivered to an incorrect location. (Doc. 11, at ¶ 43).

In early May of 2014, Castillo submitted a brief regarding a petition he had filed for allowance of appeal *nunc pro tunc* before the Supreme Court of Pennsylvania that was initially filed in early March 2014. (Doc. 11, at ¶¶ 19, 46); *see also Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014). Specifically, this brief appears to have been submitted in response to the Commonwealth's "no answer" letter to his petition, filed on April 8, 2014. *See Commonwealth v. Castillo*, No. 49 MM 2014 (Pa. 2014). Sometime after he submitted his brief, the Supreme Court of Pennsylvania informed Castillo that they only received an empty envelope without the actual

brief. (Doc. 11, at ¶ 46). Included with the letter from the Supreme Court of Pennsylvania was the original envelope sent by Castillo, which had been stamped with the letters "CMPC." (Doc. 11, at ¶ 47). Castillo apparently presumed that this "CMPC" individual or entity was responsible for the contents of his brief failing to reach the Supreme Court of Pennsylvania, and filed a grievance complaining about the missing brief in early June of 2014.[6] (Doc. 11, at ¶ 50). A few weeks later, Castillo mysteriously received an unmarked package containing his missing brief to the Supreme Court of Pennsylvania. (Doc. 11, at ¶ 52).

Castillo's second amended complaint (Doc. 11) is now before the Court pursuant to its statutory screening obligation under 28 U.S.C. § 1915(e)(2) to screen a complaint brought *in forma pauperis* and dismiss it if the complaint fails to state a claim upon which relief can be granted.

## II. SECTION 1915 STANDARD

Under 28 U.S.C. § 1915, the Court is obligated, prior to service of process, to screen a civil complaint brought *in forma pauperis*. The Court must dismiss the complaint if it is frivolous or malicious, or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).

---

[6] Castillo asserts that this grievance was taken off SCI-Smithfield's formal grievance tracking system, and that the grievance officers did not respond to Castillo's inquiries regarding the existence of a "CMPC" department. (Doc. 11, at ¶¶ 49, 51). To the extent that Castillo complains of SCI-Smithfield grievance officials' failure to follow a particular grievance procedure, this claim is not cognizable.

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Assoc'd Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court of the United States held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court

must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

A. Effect of filing an amended complaint

As a matter of law, an amended complaint takes the place of any previously filed complaints, effectively invalidating them, unless the amended complaint specifically refers to or adopts the earlier pleading. *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."); *see* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended . . . supersedes the pleading it

modifies. . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."). As described above, on September 20, 2016 the Court dismissed various claims in Castillo's amended complaint without prejudice to him refiling a second amended complaint, further advising Castillo that the amended complaint "must be a pleading that stands by itself without reference to the original complaint . . . [and] in regard to his §1983 claims, Castillo must aver facts indicating the personal involvement of each state actor in the alleged wrong doing." (Doc. 6, at 23).

## III.  DISCUSSION

### A.  DISMISSED CLAIMS

In an Order dated October 17, 2016 (Doc. 7), the District Court adopted this Court's Report and Recommendation and dismissed the following claims with prejudice:

1. Castillo's access to the courts and procedural due process claims; and

2. Castillo's claims against the Jane and John Doe grievance officers at the LCCF, Mrs. Lefler, the Jane and John Doe grievance officers at SCI-Retreat, and the Jane and John Doe grievance officers at SCI-Smithfield.

The District Court also dismissed Castillo's remaining federal claims without prejudice, and granted Castillo leave to file an amended complaint for the limited purpose of reasserting his remaining federal claims (specifically, his first amendment claim for interference with outgoing mail, supervisory liability claims, and conspiracy claims). (Doc. 7, at 1). However, Castillo's second amended complaint appears to retain and embellish upon several of his previously dismissed claims, thereby exceeding the scope of the District Court's leave to amend. Accordingly, this Court will not reconsider Castillo's claims that were formerly dismissed with

prejudice (specifically, Castillo's procedural due process claims that are asserted in counts VII and VIII of the second amended complaint).[7] *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the case."). Rather, this Court will only consider the following claims: (1) Castillo's equal protection claims under 42 U.S.C. § 1983 (Counts IX and X); (2) Castillo's conspiracy claims pursuant to 42 U.S.C. § 1985(2) (Counts XI and XII); (3) Castillo's Civil RICO claims under 18 U.S.C. 1964(c) (Counts XIII and XIV); and (4) Castillo's remaining state law claims (Counts I-VI).

    B. WHETHER CASTILLO'S EQUAL PROTECTION CLAIMS (COUNTS IX AND X) AND CIVIL RICO CLAIMS (COUNTS XI AND XII) WERE WITHIN THE SCOPE OF THE DISTRICT COURT'S LEAVE TO FILE A SECOND AMENDED COMPLAINT

In the instant complaint, Castillo raises Equal Protection claims under 42 U.S.C. § 1983 and Civil RICO claims under 18 U.S.C. 1964(c) for the first time before this Court. However, the District Court's Order granting Castillo leave to amend was limited in scope, and stated that "Plaintiff will be given thirty (30) days leave to file a second amended complaint that *reasserts his remaining claims*..." (Doc. 7, at 1)(emphasis added). Thus, the two additional claims in the

---

[7] In Counts VII and VIII, Castillo argues that he was denied due process of law when the grievance systems in place at LCCF and SCI-Retreat did not ultimately result in the return of his mail. (Doc. 11, at 22). Specifically, Castillo avers that the available procedures were wholly inadequate and thus did not provide him with an opportunity to be heard regarding the alleged unlawful taking of his personal property. (Doc. 11, at 22). As such, this claim not only restates Castillo's previously dismissed due process claim, but also reasserts previous allegations of improper responses and processing of Castillo's grievances under the guise of a due process violation. "A judgment that dismisses a suit against a defendant with prejudice bars the plaintiff from bringing suit again on that same cause of action." *See Lawlor v. Nat'l Screen Serv. Copr.*, 349 U.S. 322, 327 (1955). As such claims were dismissed with prejudice (Doc. 7), the Court will not examine Counts VII and VIII further in the instant complaint.

second amended complaint fail to comply with and conform to the District Court's Order of October 17, 2016.

### 1. Violation of rights to Equal Protection

In his second amended complaint, Castillo asserts that defendants Mrs. Gillis, LCCF, LCCF personnel, Mrs. Lefler, SCI-Smithfield, and SCI-Smithfield personnel violated his right to equal protection by "willfully misle[ading Castillo] to believe that his grievances and documents were being forwarded." (Doc. 11, at 27). Castillo submits that as a result of this misconduct he was effectively deprived of the grievance process itself, a privilege that other inmates at LCCF and SCI-Smithfield were otherwise afforded. (Doc. 11, at 24-27).

As discussed *supra*, Castillo's equal protection claims were not contemplated in his amended complaint and are now being raised for the first time. Thus, these additional claims go beyond the scope of the claims already raised in the amended complaint and the District Court's subsequent leave to amend. (Doc. 7, at 1) "The rejection of an unapproved amended complaint is not an abuse of discretion." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 524 (3d Cir.2007). As such, Castillo's equal protection claims are rejected, as they do not fall within the permissible scope of the second amended complaint.

However, in the event Castillo's equal protection claims were properly before this Court, they would still not be successful on the merits. The Equal Protection Clause of the Fourteenth Amendment provides that all individuals similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Two theories exist upon which a plaintiff may assert an equal protection claim. *Conklin v. Warrington Twp.*, No. 06-2245, 2008 WL 2704629, at *11 (M.D. Pa. July 7, 2008). The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as gender or race. *See McLaughlin v.*

*Florida*, 379 U.S. 184, 192 (1964). In contrast, under the class-of-one theory, a plaintiff may have an equal protection claim even absent protected-class status if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Because Castillo has not alleged that he is a member of any protected class, his equal protection claim would presumably be construed under the class-of-one theory. Under this legal theory, "mere allegations of mistreatment without identification of similarly situated individuals who were treated differently will not support an equal protection claim." *See Hudson v. Coxon*, 149 Fed. Appx. 118, 121 (3d Cir. 2005). Instead, the plaintiff must allege "occasions or circumstances" of differential treatment. *Young v. New Sewickley Twp.*, 160 Fed. Appx. 263, 266 (3d Cir. 2005).

In the instant case, Castillo fails to sufficiently plead that he was treated differently than other inmates similarly situated. Rather, Castillo's equal protection claim relies on the conclusory allegation that the defendants "willfully misled" him into thinking he was participating in the grievance process. This infers that any difference between Castillo and the other inmates did not pertain to his access to the grievance process, but rather the adequacy of its outcome. As discussed in length in this Court's previous Report and Recommendation, such claims are generally not meritorious. (Doc. 6, at 15-17); *See Ramos v. Pa. Dep't of Corr.*, No. CIV. 4:CV-06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."). Further, "dissatisfaction with a response to an inmate's grievances does not support a constitutional claim." *Crawford v. White*, 2015 WL 3753930, at *9 (M.D. Pa.

June 16, 2015) (citing *Alexander v. Gennarini,* 144 F. App'x 924 (3d Cir. 2005)). This is especially the case given that inmates have no constitutionally protected right to a grievance procedure. *Ramos*, 2006 WL 2129148, at *3. Accordingly, there is no basis for relief under Castillo's equal protection claims. Moreover, Castillo has not identified any similarly situated individuals that were treated differently on certain occasions, and merely advances bald assertions of unequal treatment by the Defendants. *See Hudson*, 149 F.App'x at 121; *New Sewickley Twp.*, 160 F.App'x at 266. As such, even if Castillo's equal protection claims were properly asserted in the instant complaint, they still fail to state a claim for which relief could be granted.

For the aforementioned reasons, it is recommended that counts IX and X be dismissed with prejudice.

### 2. Violations of the RICO Act

In his second amended complaint, Castillo added two Federal RICO Act claims; one against Defendants Mrs. Gillis, LCCF and LCCF's personnel, and another against Defendants Mrs. Lefler, SCI-Smithfield and SCI-Smithfield's personnel. (Doc. 11, at 32-35). For similar reasons as discussed *supra*, these claims are rejected as they exceed the scope of the District Court's prior Order. (Doc. 7, at 1); *See U.S. ex rel. Atkinson,* 473 F.3d at 524.

However, even if Castillo had been given leave to assert this new RICO Act claim, it would still fail on the merits due to lack of standing. The civil RICO statute creates a cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962, provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

In addition to meeting certain constitutional standing requirements, a plaintiff seeking recovery under RICO must satisfy as a threshold matter the following additional standing criterion: (1) that he suffered injury to his business or property and (2) that the injury was proximately caused by defendants' racketeering activities. *See Maio v. Aetna,* 221 F.3d 472, 483 (3d Cir. 2000); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Thus, a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima,* 473 U.S. at 496.

To meet the injury requirement under the RICO Act, the plaintiff must allege concrete financial loss. An injury of mental distress does not qualify as an injury to "business or property." *Zimmerman v. HBO Affiliate Grp.,* 834 F.2d 1163, 1169 (3d Cir.1987). Upon review of the factual allegations forming the basis of Castillo's second amended complaint, it is clear that Castillo cannot establish standing to sue for alleged violations of the RICO Act. Castillo's claim stems from the allegation that the named LCCF and SCI-Smithfield Defendants[8] demanded a payment of fifteen dollars in order to return Castillo's undelivered legal mail and provide cash slip records to him. (Doc. 11, at 34). According to Castillo, this conduct constituted racketeering activity, as it would have been unnecessary to request the return of his mail had the "defendants [not] abscond[ed] with [Castillo's] mail in the first instance." (Doc. 11, at 35).

---

[8] The Court notes that while the heading of Count XIII is framed as a RICO Act violation on behalf of Mrs. Gillis, LCCF and its personnel, its subsequent factual support is a restatement of Castillo's 42 U.S.C. § 1985(c) claims. (Doc. 11, at 32-33). In deference to Castillo's *pro se* status, the Court will infer that Castillo intended to incorporate the same RICO claim in Count XIII as advanced in Count XIV. (Doc. 11, at 34-35).

However, it is clear that Castillo cannot overcome the threshold requirement of demonstrating actual injury, as he does not plead any facts that demonstrate payment of the fifteen dollar fee. Moreover, the record establishes that the fifteen dollar fee was not in relation to the return of Castillo's mail, but rather the reproduction costs[9] for his requested cash slip records. (Doc. 11, at 47). Thus, even when construing the Defendants' alleged conduct in the light most favorable to Castillo, there is no evidence that it was the type of injury compensable under the RICO Act. Specifically, Castillo does not allege any concrete injury to his business or property sufficient to confer him with standing.

For these reasons, the Court recommends that counts XIII and XIV of the second amended complaint be dismissed with prejudice.

C. FAILURE TO STATE A CAUSE OF ACTION UNDER 42 U.S.C. § 1985(2) (CLAIMS XI AND XII)

In addition to his § 1983 claims, Castillo further submits that the Defendants engaged in an unconstitutional conspiracy against him in violation of 42 U.S.C. § 1985(2). Specifically, Castillo alleges a conspiracy by the Defendants under § 1985(2) for hindering the delivery of his mail. (Doc. 11, at 30-32). "Unlike its counterpart 42 U.S.C. § 1983, there is no requirement that the deprivation of rights [under § 1985] must occur under color of state law." *Ammlung v. City of Chester*, 355 F. Supp. 1300, 1305 (E.D. Pa. 1973), *aff'd*, 494 F.2d 811 (3d Cir. 1974). "Section 1985(2) provides a cause of action against those who conspire 'for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or

_____

[9] The Court notes that these costs were pursuant to Section VI of the Department of Correction's Release of Information Policy, DC-ADM 003.

Territory, with intent to deny to any citizen the equal protection of the laws.'" *Tarapchak v. Lackawanna Cnty.*, No. CV 15-2078, 2016 WL 1246051, at *7 (M.D. Pa. Mar. 24, 2016) (quoting 42 U.S.C. § 1985(2)).

As an initial matter, Castillo was given leave to amend his conspiracy claims in order to "aver facts indicating the personal involvement of each state actor in the alleged wrongdoing." (Doc. 6, at 23; Doc. 7). "[I]t is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." *Deangelo v. Brady*, 185 F. App'x. 173, 175 (3d Cir. 2006) (not precedential). Indeed, "[t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 F. App'x 100, 103 (3d Cir. 2013) (not precedential). Moreover, "[t]o constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Phila., Pa.*, 533 F.3d 183, 205 (3rd Cir. 2008); *see also Twombly*, 550 U.S. at 556 (requiring "enough factual matter (taken as true) to suggest that an agreement was made").

Here, Castillo has not advanced any further arguments that would support a claim for conspiracy. Specifically, Castillo does not aver any well-pleaded facts that would allow the Court to infer an agreement between two or more defendants to engage in a conspiracy to interfere with his mail. *See Twombly*, 550 U.S. at 556-57 ("[W]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Accordingly, Castillo's bare allegations do not establish a claim for conspiracy under 42 U.S.C. § 1985(2).

Further, it is clear that Castillo has offered no additional evidence to demonstrate the personal involvement of Mrs. Gillis, Mrs. Lefler, the LCCF staff or the SCI-Smithfield staff in

the alleged underlying misconduct of tampering with outgoing mail. The extent of Castillo's claim is that the Defendants "conspire[d] to prevent the delivery of correspondence from [Castillo] to the courts, thereby denying [him] access to the courts []." (Doc. 11, at 31). While Castillo alleges generally that this constitutes an obstruction of justice, this argument further sounds of Castillo's § 1983 claim that his mail was subject to interference. Castillo's first amendment tampering with mail claim has been thoroughly examined and addressed by this Court in its previous Report and Recommendation. (Doc. 6, at 8-12). This claim was dismissed without prejudice, as Castillo had failed to allege a "pattern and practice" of interference by the Defendants with his outgoing legal mail. *See Jones*, 461 F.3d at 359. As discussed in the September 20, 2016 Report and Recommendation:

> "Castillo's allegations are simply insufficient to establish a "pattern and practice" of mail interference. Of the four instances Castillo complains of, only [] two potentially lend support to a First Amendment claim for mail interference, whereas the events that occurred at LCCF merely sound in negligence. Moreover, although the incidents that Castillo raises all occurred over the span of a few months, they took place at different prisons located across the Commonwealth and each incident involved different Defendants. Because Castillo has not pled plausible facts to support his bald assertion that all Defendants conspired together to disrupt his outgoing mail, any basis for finding that Defendants' actions constituted a "pattern and practice" of mail interference is speculative and wholly conclusory. (Doc. 3, ¶ 84); *See Booze v. Wetzel, et al.*, No. 1:13-CV-2139, 2016 WL 4191041, at *5 (M.D. Pa. Apr. 5, 2016); *Barrett v. C.O. Matters*, No. 1:14-CV-1250, 2015 WL 5881602, at *8 (M.D. Pa. Sept. 30, 2015); *Flynn v. Dep't of Corr.*, No. 3:12-CV-1535, 2015 WL 434997, at *4–5 (M.D. Pa. Feb. 3, 2015)." (Doc. 6, at 12).

While Castillo was given leave to amend this claim, he has not provided any further facts that would support mail interference in violation of the first amendment. *See Booze v. Wetzel*, 2016 WL 4191041, at *4-5 (collecting cases), *report and recommendation adopted*, No. 13-CV-2139, 2016 WL 4158771 (M.D. Pa. Aug. 5, 2016) (Holding that isolated instances of outgoing inmate mail being lost or confiscated, without more, do not amount to a constitutional

violation). Because Castillo has failed to correct the pleading deficiencies previously identified by this Court by proffering facts that demonstrate the Defendants' personal involvement in the alleged unconstitutional conduct, it is respectfully recommended that Counts XI and XII be dismissed from this action with prejudice for failure to state a claim.

In addition, the Court notes that counts XI and XII include allegations that the defendant's alleged conspiracy in violation of section § 1985 resulted in Castillo's deprivation of access to the courts. (Doc. 11, at 30-32). As discussed *supra*, the District Court denied Castillo's access to the courts claims with prejudice for failure to state a claim. (Doc. 6, at 23). Here, while framed as an obstruction of justice claim, it is evident that Castillo's implied access to the courts claim lacks merit.

As Castillo does not advance any well-pleaded facts of a conspiracy to deprive him of his constitutional rights, it is respectfully recommended that Castillo's allegations of a conspiracy, as well as the first amendment mail tampering and access to the courts claims inferred therein, be dismissed with prejudice.

### D. STATE LAW CLAIMS (COUNTS I-VI)

In his second amended complaint, Castillo also asserts state law claims for conversion, fraud, and conspiracy to commit fraud (Counts I-VI). Where a District Court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Whether a court exercises supplemental jurisdiction is within its own discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). A court's decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain,

the balance of these factors indicates that the remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n. 7. Therefore, it is recommended that Castillo's state law claims I-VI be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  LEAVE TO AMEND

The Third Circuit has acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir.2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (citing *Lake*, 232 F.3d at 373 ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint.")). Here, this Court afforded Castillo leave to amend his pleadings following dismissal of his amended complaint to properly state a claim for which relief can be granted. The Court further outlined for Castillo the liberal standards of pleading to which he would be required to conform. Despite the Court's alerting Castillo to the deficiencies in his pleadings and granting him leave to amend, Castillo failed to cure the pleading's deficiencies. More importantly, it is clear from the exhibits attached to Castillo's second amended complaint that Castillo could allege no additional factual allegations that would entitle him to relief. Thus, the Court submits that the exercise of its discretion calls for denying Castillo leave to file a third amended complaint, as permitting him to take another "bite at the apple" to assert a cognizable claim would be futile.

Accordingly, it is respectfully recommended that Castillo not be granted any further leave to amend his complaint.

## V. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Plaintiff's second amended complaint (Doc. 11) be **DISMISSED WITH PREJUDICE**; and

2. The Clerk be directed to **CLOSE** this case.

**BY THE COURT:**

Dated: October 30, 2017

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MICKEY CASTILLO,

                Plaintiff,

        v.

ALL JANE/JOHN DOES OF
DEPUTIZED POSTAL OFFICERS AT
ALL FACILITIES PLAINTIFF WAS
INCARCERATED, et al.,

                Defendants.

CIVIL ACTION NO. 3:15-CV-00910

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **October 30, 2017**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: October 30, 2017**

                *s/ Karoline Mehalchick*
                **KAROLINE MEHALCHICK**
                **United States Magistrate Judge**